**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 13-11238 |
| | ) | |
| **TREATY ENERGY CORPORATION** | ) | SECTION "B" |
| | ) | |
| *DEBTOR* | ) | CHAPTER 7 |
| | ) | |

**MEMORANDUM OF DAVID HALLIN IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

David Hallin ("Mr. Hallin") files this memorandum in support of his Motion for Partial Summary Judgment and respectfully avers as follows:

**INTRODUCTION**

David Hallin ("Mr. Hallin") files this Motion for Partial Summary Judgment against Treaty Energy Corporation ("TECO") seeking a judgment finding that Mr. Hallin is not liable for TECO's claims for actual or compensatory damages arising from the alleged sale by TECO of TECO common stock during the pendency of the involuntary petition filed by Hallin and others, in the amount claimed by TECO of $453,750.46. Because there is no genuine issue of material fact that the alleged stock sales did not occur in the five weeks following the filing of the Involuntary Petition and that the stock price did not decrease during that time, this Motion for Summary Judgment should be granted.

Specifically, in its "Motion for Order Awarding Costs, Attorney's Fees, Compensatory Damages, and Punitive Damages in Favor of Treaty Energy Corporation and Against Petitioning

Alleged Creditors and Their Counsel" (the "303(i) Motion") [Dkt. No. 45], TECO claims that it suffered damages as a result of the filing of the Involuntary Petition because it was forced to sell 84 million shares of stock at a "reduced price" in the five week period following the filing of the Involuntary Petition (the "Petition Period"). As set forth more fully below, a brief review of TECO's publicly available SEC filings, however, reveals that TECO had *no* authorized shares to sell at the time the Involuntary Petition was filed and had none during the entire pendency of the contested involuntary bankruptcy proceeding, as TECO had issued all shares up to its authorized level by April 15, 2013, well before the filing of the involuntary petition by Hallin and others.

Moreover, the documents and discovery responses produced by TECO to date indisputably show that the sales TECO alleges to have occurred during the Petition Period were not consummated until much later. Therefore, TECO's own admissions contradict TECO's claims that it sold 84 million shares during the five weeks following the filing of the Involuntary Petition. What is more, TECO did not disclose the filing of the Involuntary Petition in its public filings, which illustrates that the filing could not have caused a drop in the stock price or the value of the stock, even if the sales had been consummated as TECO claims during the five weeks following the filing of the Involuntary Petition and until its dismissal.

In fact, a cursory review of the stock price, as tracked by Standard and Poor's Index, reveals that TECO's stock price actually *increased* during the Petition Period. As such, there is no genuine issue as to any material fact in relation to TECO's inability to recover the alleged compensatory damages, and Mr. Hallin should be awarded partial summary judgment on this claim.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. TECO filed a Motion for Damages Allegedly Incurred as a Result of the Filing of the Involuntary Petition.

On May 7, 2013, David Hallin, Ronda Hyatt, Jeffrey Morgan, Alexander Rasbury, David McCourtney, and Mack Maxcey (the "Petitioners") filed an Involuntary Chapter 7 Bankruptcy Petition against TECO, which they amended on May 9, 2013. [Dkt. Nos. 1, 3]. On May 31, 2013, TECO, through its attorney, Mr. Schafer, filed a Motion to Dismiss the Involuntary Petition [Dkt. No. 6], and sought an expedited hearing, which the Court granted [Dkt. Nos. 7, 9]. On June 12, 2013, the Court also granted TECO's Motion to Dismiss the Involuntary Petition. [Dkt. No. 28].

Five months later, on November 14, 2013, TECO filed a Motion to Reopen the Case to assert claims for damages against the Petitioners. [Dkt. No. 34]. On December 23, 2013, the Court granted the Motion to Reopen the Case. [Dkt. No. 43]. On January 17, 2014, TECO filed its 303(i) Motion. [Dkt. No. 45]. TECO's 303(i) Motion included the following claims:

> "XXV.
>
> As a result of the Improper [In][v]oluntary [sic] Petition filed by the Petitioning Creditors, TECO, in order to provide necessary capital to maintain its business operations, was forced to sell restrictive shares of its capital stock for less than the 40% discount that it was previously offering. During the time period beginning May 9, 2013, two days after the Involuntary Petition was filed, and extending through June 12, 2013, the date on which the hearing to dismiss the Involuntary Petition was held and the Petition dismissed, TECO sold 84,557,360 shares for a total price of $384,571.26, thereby incurring a loss in value, considering the normal 40% discount, in the amount of $453,750.46."

See 303(i) Motion, pg. 9 [Dkt. No. 45]. TECO also made a claim for $50,000 in damages based on its need to "significantly increase its investor relations staff and resources" after the filing,

and a claim for punitive damages in the amount of $200,000.00. *See* 303(i) Motion, [Dkt. No. 45], pgs. 9-1-. ¶¶XXVI-XXVII.

> **2. Contrary to their allegations in the 303(i) Motion, TECO's filings with SEC show that TECO had no authorized shares remaining to sell during the five weeks following the filing of the Involuntary Petition.**

TECO's admission in its own public filings with the Securities and Exchange Commission (the "SEC filings") directly contradict TECO's claim in paragraph XXV of the 303(i) Motion. TECO plainly states in its SEC filings that TECO was not authorized to sell 84,557,360 shares of stock after March 31, 2013. TECO's SEC filing—its own admission— clearly states, "We are authorized to issue 1.25 Billion shares of our common stock. At December 31, 2012, we had 945,248,192 shares issued and outstanding. During the three months ended March 31, 2013, we issued 290,460,404 shares." *See* TECO' Form 10-Q for the Quarter ending March 31, 2013 (filed September 16, 2013), attached as Exhibit A, pg. 14, "NOTE 8 SHAREHOLDER EQUITY." Simple arithmetic leads to the conclusion that, after March 31, 2013, TECO was only authorized to sell 14,290,404 more shares:

| Shares issued as of 12/31/2012 | 945,249,192 |
| Shares issued in Quarter ending 3/31/2013 | 290,460,404 |
| TOTAL shares issued as of 3/31/2013 | 1,235,709,596 |
| AUTHORIZED AMOUNT OF SHARES | 1,250,000,000 |
| Shares available for issuance as of April 1, 2014 | 14,290,404 |

TECO admits in its SEC filings that it had exceeded its authorized stock issuance by April 15, 2013, *prior to the Petition Period.* *See* TECO's 10-Q Forms for the Quarter Ended September 30, 2013 (filed January 22, 2014) and for the Quarter Ended June 30, 2013 (filed

November 8, 2013), at Section 10 – Derivative Liability, attached as Exhibits B and C ("On April 15, 2013, the Company issued 1,049,036 shares that *exceeded our authorized amount of shares…. there are not any authorized shares to settle this obligation*.")(emphasis added).  As such, TECO had no shares to sell as of and during the entire Petition Period, and its claims that it sold 84 million shares during that time are clearly unsupported and contradicted by TECO's public admissions.

Accordingly, pursuant to TECO's own admissions, it only had 14.29 million shares to issue in the entire second quarter of 2013, an amount that is woefully less than the alleged 84 million shares it claims to have sold from May 9, 2013 through June 12, 2013 (the "Petition Period").  Moreover, the 10-Q filing for the Quarter ending September 30, 2013 reflects that in the third quarter ending June 30, 2013, during which the Petition Period in question falls, TECO issued:

(1) 12,949,440 shares to relieve stock payable valued at $112,688, for which no gain or loss was recorded, with 425,000 shares for services;
(2) 2,300,000 shares for services valued at $25,400; and
(3) 90,000 shares that were previously granted and accounted for but had not been issued;

for a total of 15,339,440 shares issued in the quarter ending June 30, 2013.  *See* TECO's 10-Q Form for the Quarter ending September 30, 2013, attached as Exhibit B, pgs. 17-18 (Note 8-Shareholders' Equity).  Taking these issuances into account, TECO had **no shares left to sell**, and had in fact issued 1,049,036 shares *in excess* of its authorized limit of 1.25 billion, without taking into account the approximately 84 million shares allegedly sold during the Petition Period.  Further, the stock issuances TECO reports that it made in its filings with the SEC were clearly not "discounted by 40%" and sold into the market as alleged, but were instead, issued for payment of services or to retire debt.  *See* Exhibits B and C.

[5]

### 3. TECO admits in its SEC filings and discovery responses that TECO was not authorized to sell stock during the Petition Period.

Mr. Hallin's attorneys repeatedly requested documentation from TECO's counsel regarding the alleged sales of stock as claimed by TECO in its 303(i) Motion. At a status conference with the Court conducted on April 24, 2014, TECO's counsel produced a single-page Excel spreadsheet listing the alleged sales, with three pages from its recent SEC filings with certain portions designated. *See* Documents produced by hand by TECO on April 24, 2014 [TECO did not label these documents with bates numbers], attached as Exhibit D. The excerpts of TECO's SEC filings designated by TECO's counsel clearly state:

> On October 31, 2013, the Company finalized the process to increase the authorized number of shares to 1.95 Billion shares. Beginning immediately, the Company began to issue the shares re-classified to the derivative liability, therefore, during the quarter ended December 31, 2013, the liability will be eliminated.

*Id.* TECO goes on to state:

> On November 27, 2013, the Company issued 97,719,396 shares of its common stock. These included 85,082,500 shares for $388,494 of cash payments…

*Id.* Accordingly, TECO repeatedly admits that TECO did not issue these shares until well after the Petition Period and even then, TECO does not state and produced no evidence that the sales were placed into the market. Instead, TECO used the issuances to retire debt or pay for services in lieu of cash.

Likewise, the documentation produced by TECO as evidence of the alleged stock sales alleged in paragraph XXV of the 303(i) Motion show that TECO did not consummate these sales during the Petition Period as they allege.

When asked to admit or deny the following Request for Admission:

No. 5 "Admit that TECO did not in fact issue or otherwise distribute any shares from the time the Involuntary Petition was filed on May 7, 2013, until the time the Involuntary Petition was dismissed on June 12, 2013.

TECO responded, "Admitted".

*See* TECO's Discovery Responses at Request for Admission No. 5, attached as Exhibit E. TECO's claim that it sold stock during the Petition Period therefore fails as there is absolutely no nexus between the alleged stock sales and the filing of the involuntary petition, because simply stated, no stock sale occurred. The claim borders on bogus.

4. **TECO did not sell contractual rights to receive shares during the Petition Period because TECO reflected the income from the shares as derivative liability, not equity.**

Undaunted by the admissions now on file and submitted to the SEC, TECO now manufactures a claim based upon the sale of "contractual rights to receive shares". However, TECO again trips over it's own financial disclosures, as TECO has reflected the revenue from the fall 2013 stock sales not as equity, but as a derivative liability. *See* TECO's 10-Q Forms from January 22, 2014 and November 8, 2013, Section 10 – Derivative Liability ("On April 15, 2013, the Company issued 1,049,036 shares that *exceeded our authorized amount of shares*. To account for this error, we initially recorded a Derivative Liability of $10,490 related to these shares.…At April 15, 2013, *the Company had a stock payable obligation of $1,066,019*. Until the increase of authorized shares is completed during the fourth quarter of 2013, we have re-classed the stock payable to Derivative Liability as *there are not any authorized shares to settle this obligation*….At September 30, 2013, the Company had a total Derivative Liability of $3,107,028…"). Simply put, the exchange of stock for debt is quite contrary to a sale of the stock in the marketplace; it is a private negotiation between the contracting parties.

[7]

Thus, TECO was neither authorized to nor did it actually sell the 84 million shares it claims to have sold during the Petition Period. TECO's claims for damages based on these alleged "sales" of stock are not only unsupported, but in fact, never occurred. Consequently, TECO could not have incurred any damages based upon this claim and as such, Mr. Hallin's Motion for Partial Summary Judgment should be granted dismissing with prejudice the compensatory damage claims asserted by TECO.

5. **TECO admitted that it did not report or otherwise disclose the filing of the Involuntary Petition in its public filings with the SEC before the Involuntary Petition was dismissed on June 12, 2013.**

In its response to Mr. Hallin's Second Request for Admission, which asked TECO to "Admit that TECO did not report or otherwise disclose the filing of the Involuntary Petition in its public filings with the SEC before the Involuntary Petition was dismissed on June 12, 2013," TECO *admitted* this fact "to the extent that it was not required to report the filing of an involuntary petition which was opposed by Treaty". *See* TECO's Responses to Requests for Admission, attached as Exhibit E. To date, TECO has not reported the filing of the Involuntary Petition in any of its public filings. TECO has made no additional filings in an attempt to report this event. As such, TECO did not disclose as material, that the Involuntary Petition had been filed, obviously deeming the issue to be immaterial to the marketplace for those trading in TECO's publicly traded shares.

6. **Quite contrary to its allegations, TECO's stock price actually increased during the Petition Period.**

Likely most damning to TECO's claims, Standard and Poor's Index of TECO's stock price during the Petition Period compiled by Mr. Hallin's expert, verifies that TECO's stock price actually steadily increased during the Petition Period. *See* Standard and Poor's Index for May through June 2013, attached as Exhibit F. Specifically, this chart shows that on May 7,

[8]

2013, TECO's stock was traded at $0.012 per share. *Id.* By May 9, 2013, the stock price had increased to $0.014. *Id.* By June 12, 2013, TECO's stock price rose to $0.0174. Clearly the "40% decrease" TECO alleges in the 303(i) Motion is false, as proven by publicly available independent documentation tracking the stock price of this publicly traded company.

## LAW AND ARGUMENT

### I. Summary Judgment Standard

Summary judgment is not a disfavored procedural shortcut, but is an integral part of federal procedure that eliminates unsupported claims without a costly trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S. Ct. 2548, 2555, 91 L. Ed. 2d 265 (1986). Federal Rule of Civil Procedure 56(a) which is incorporated by reference in Bankruptcy Rule 7056, provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Beck v. Somerset Technologies, Inc.*, 882 F.2d 993, 996 (5th Cir. 1989).

The movant has the initial burden of showing the absence of a genuine issue of material fact; however, this burden may be discharged by showing that there is an absence of evidence to support the non-movant's case. *Celotex,* 477 U.S. at 325, 106 S. Ct. 2548, 91 L. Ed. 2d at 275. The summary judgment petitioner does not have to support its motion with "materials that negate the opponent's claims." *In re Ford Motor Co. Bronco II Product Liability Litigation,* 982 F. Supp. 388, 393 (E.D. La. 1997), *citing Celotex,* 477 U.S. at 323, 106 S. Ct. at 2553.

Once the movant produces evidence that there is no general issue of material fact, the burden shifts to the non-movant to point out evidence in the record that establishes the existence of a genuine issue of material fact for trial. *Celotex,* 477 U.S. at 322, 106 S. Ct. at 2252. The

non-movant "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

The mere existence of some factual dispute between the parties or claims by the non-movant "that additional discovery or a trial might reveal facts of which the non-moving party is currently unaware is insufficient to defeat the motion." *In re Ford,* 982 F. Supp. at 393, *citing Woods v. Federal Home Loan Bank Bd.,* 826 F. 2d 1400, 1414-15 (5th Cir. 1987), *cert denied* 485 U.S. 959, 108 S. Ct. 1221, 99 L. Ed. 2d 422. Rather, an issue of fact is "genuine" only if the evidence is sufficient to support a reasonable jury verdict for the plaintiff. *Anderson.* 106 S. Ct. at 2509-12; *Hanchey v. Energas Co.,* 925 F. 2d 96, 97 (5th Cir. 1990).

### A. **Partial Summary Judgment is Appropriate because there is No Genuine Issue of Material Fact that the Alleged Stock Sales did not Occur During the Petition Period.**

As the above facts make clear, contrary to its allegations in the Petition, TECO sold no stock during the Petition Period that could potentially constitute damages resulting from the filing of the Involuntary Petition. As such, it could not have suffered the alleged damages from the "decreased stock price" at which these shares were allegedly sold. Contrary to their allegations in the 303(i) Motion, TECO's filings with SEC show that TECO had no shares left to sell during the five weeks following the filing of the Involuntary Petition, so these sales could not possibly have been consummated during the Petition Period. TECO readily admits this fact in its SEC filings and discovery. Moreover, TECO did not sell contractual rights to receive shares during the Petition Period because TECO reflected the income from the shares as derivative liability, not equity. As explained above, shares provided in exchange for debt in a

private transaction between TECO and a vendor do not constitute a sale into the marketplace, but instead reflect the result of negotiations between the parties.

Because the alleged 84 million shares were not sold during the Petition Period and TECO never disclosed the filing of the Involuntary Petition, it is impossible for TECO to show that it suffered the alleged damages resulting from the reduced sale price. Any claim for damages based upon the filing of the involuntary petition is therefore pure speculation. For these reasons, partial summary judgment in favor of David Hallin and against TECO dismissing the claims for compensatory damages is appropriate.

> B. **Partial Summary Judgment is Appropriate because TECO's Non-disclosure of the Involuntary Petition is a Per Se Admission that the Involuntary Petition Did Not Affect Any Sale of Shares.**

To date, TECO has not disclosed to the investing public the fact that the petitioners filed the Involuntary Petition "as a material fact" related to the market for TECO shares. This is a per se admission by TECO that it considered the filing of the Involuntary Petition to be *immaterial* information. This further evidences that, regardless of the time period in which the stock sales actually occurred, the stock prices could not have been and were not affected by knowledge of the filing of the Involuntary Petition by potential investors.

The SEC rules require corporate filings to contain "*material* information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made not misleading." 17 C.F.R. § 240.12b–20 (emphasis added). A fact is material "if there is a substantial likelihood a reasonable investor would consider it important." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438 (1976). "The concept of materiality translates into information that alters the price of the firm's stock." *Nathenson v. Zonagen Inc.*, 267 F.3d 400,

[11]

415 (5th Cir. 2001); *see also Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000), *quoting In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1425 (3d Cir. 1997).

As set forth above, TECO did not disclose in any public filing the fact that the petitioners had filed the Involuntary Petition. TECO's omission of a disclosure relating to the filing of the Involuntary Petition in its SEC filings proves that TECO did not deem the filing of the Involuntary Petition material information and it could not have affected the price of TECO's stock. *See Nathenson*, 267 F.3d at 415. TECO's non-disclosure of the Involuntary Petition is a per se admission that the Involuntary Petition was both immaterial and without effect on the price of the company's stock.

More importantly, TECO fails to show how the Involuntary Petition caused its stock price to drop when it has not shown that the public even had knowledge of the filing, much less any impact on any alleged purchasers of TECO stock. Moreover, the idea that an investor would invest in a company immediately upon discovering that an Involuntary Petition for Bankruptcy had been filed against it without any disclosures by the Company made as to the subject or effect of the Involuntary Petition is a preposterous allegation in and of itself.

Further still, the Financial Accounting Standards Board requires the disclosure of pending or threatened litigation if it is "probable that one or more future events will occur confirming the fact of the loss" and the "amount of loss can be reasonably estimated." Accounting Standards Codification Rule 450-20-55-10 and 450-20-55-11. TECO's non-disclosure of the pending litigation, *i.e.,* the Involuntary Petition, illustrates the absence of any loss caused by the Involuntary Petition. In fact, a cursory review of the stock price as tracked by Standard and Poor's Index, reveals that TECO's stock price actually *increased* during the Petition Period. Again, had the Involuntary Petition resulted in any real loss, TECO would have been required to

disclose the pending litigation and TECO's estimated loss as a matter of law. TECO never did this.

## **CONCLUSION**

TECO's own SEC filings demonstrate its findings that the Involuntary Petition was both immaterial and blameless as to any presently alleged loss. It is undeniable that TECO's silent financial disclosures contradict its current allegations of damages. Most importantly, TECO's stock price actually increased during the Petition Period. For these reasons, TECO's claims for compensatory damages arising from the alleged affected sale of stock due to the Involuntary Petition should be dismissed.

*WHEREFORE*, Petitioner, David Hallin, prays that:

1. After such notice and hearing as may be required, this Court grant his Motion for Partial Summary Judgment;

2. There be judgment in favor of Mr. Hallin and against TECO, dismissing TECO's claims for actual and compensatory damages arising from the alleged sale of stock in the amount of $453,750.46; and

3. The Court award all other just and equitable relief.

                                                Respectfully submitted,

                                                **ADAMS AND REESE LLP**

                                                */s/John M. Duck*

BY:    JOHN M. DUCK (LA Bar #5104)
          MARK R. BEEBE (LA Bar #19478)
          VICTORIA W. BAUDIER (LA Bar #33430)
          701 Poydras Street, Suite 4500
          New Orleans, LA 70139
          Telephone: (504) 581-3234
          Facsimile: (504) 566-0210

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and Memorandum in Support of Motion for Partial Summary Judgment was served on July 1, 2014, by **ELECTRONIC FILING** through the court's electronic filing system and/or via U.S. Mail, First Class, postage prepaid, as follows:

**ELECTRONIC MAIL NOTICE LIST**

- Victoria W Baudier     victoria.white@arlaw.com, laura.vanderpoel@arlaw.com
- Carl Dore     carl@dorelawgroup.net, zmckay@dorelawgroup.net;vmartinez@dorelawgroup.net
- John M. Duck     laura.vanderpoel@arlaw.com, john.duck@arlaw.com
- Thomas H. Gray     pacer.thglaw@gmail.com, thg.thglaw@gmail.com
- Reginald J. Laurent     laurent2@bellsouth.net
- Thomas E. Schafer     tomschafer37@icloud.com
- Office of the U.S. Trustee     USTPRegion05.NR.ECF@usdoj.gov

**MANUAL NOTICE LIST**

- (No manual recipients)

                                            */s/John M. Duck*
                                            JOHN M. DUCK